*Motion to Dismiss.*

[10] Deanna and Chris assert that the juvenile court erred in denying their motion to dismiss at the close of evidence. Because we are reversing the order of removal by the juvenile court due to insufficient evidence of serious emotional damage, we need not address this assignment of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Carey v. City of Hastings*, 287 Neb. 1, 840 N.W.2d 868 (2013).

## CONCLUSION

The juvenile court's sua sponte determination that § 43-1505(5) was unconstitutional as applied in this case was void. The court's failure to make an express finding with respect to active efforts is not fatal because in our de novo review, we find a preponderance of evidence that the Department had made active efforts which had proved unsuccessful as of the time of the hearing. However, the juvenile court erred in finding evidence of emotional damage under § 43-1505(5). Accordingly, we reverse, and remand for further proceedings.

Reversed and remanded for
further proceedings.

---

Francis M. Zimmerman, appellant, v.
Tiffany L. Biggs, appellee.
___ N.W.2d ___

Filed July 1, 2014.    No. A-13-879.

1. **Child Custody: Jurisdiction: Appeal and Error.** In considering whether jurisdiction existed under the Uniform Child Custody Jurisdiction and Enforcement Act, when the jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law, which requires an appellate court to reach a conclusion independent from the trial court.
2. **Child Custody: Jurisdiction: States.** The Uniform Child Custody Jurisdiction and Enforcement Act was enacted to serve the following purposes: (1) to avoid interstate jurisdictional competition and conflict in child custody matters, (2) to promote cooperation between courts of other states so that a custody

determination can be rendered in a state best suited to decide the case in the interest of the child, (3) to discourage the use of the interstate system for continuing custody controversies, (4) to deter child abductions, (5) to avoid relitigation of custody issues, and (6) to facilitate enforcement of custody orders.

3. ____: ____: ____. In order for a state to exercise jurisdiction over a child custody dispute, that state must be the home state as defined by the Uniform Child Custody Jurisdiction and Enforcement Act or fall under limited exceptions to the home state requirement specified by the act.

4. ____: ____: ____. The Uniform Child Custody Jurisdiction and Enforcement Act provides that a state has jurisdiction to make an initial custody determination only if it is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from the state but a parent or person acting as a parent continues to live in the state.

5. ____: ____: ____. Under the Uniform Child Custody Jurisdiction and Enforcement Act, a court may exercise emergency temporary jurisdiction under the act, but such a determination remains in effect only until a court that would have jurisdiction to make an initial custody determination (i.e., the home state of the child) enters an order.

Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Remanded for further proceedings.

Andrew J. Hilger, of Law Office of Andrew J. Hilger, for appellant.

No appearance for appellee.

INBODY, Chief Judge, and IRWIN and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Francis M. Zimmerman appeals an order of the district court for Douglas County, Nebraska, holding that the court was without authority to address Zimmerman's request for custody under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). We find that the court erred in declining to exercise jurisdiction over the custody request, and we remand for further proceedings.

## II. BACKGROUND

Appellee, Tiffany L. Biggs, has not filed any brief on appeal. Zimmerman asserts that the basic factual background

is generally undisputed, and our review of the record from the lower court confirms this suggestion.

The parties are the unwed parents of two sons, both born in Omaha. The older son was born in 2010, and the younger son was born in 2013. The parties had resided together in Omaha at least since the older son's birth.

Biggs appeared pro se at a hearing before the district court. Although she was not sworn in to testify, she answered questions asked by the court. Biggs indicated that in April 2013, the parties traveled to Iowa to visit Biggs' parents. Zimmerman returned to Omaha with both children, and Biggs came back to Omaha and took the younger son with her back to Iowa. Shortly thereafter, Biggs filed a motion in district court in Iowa, seeking a domestic violence protection order.

Zimmerman traveled to Iowa and appeared in the Iowa court proceeding. On May 10, 2013, the Iowa court granted the protection order. In that protection order, the Iowa court also granted Biggs temporary custody of both children. The actual protection order is not in the record presented to us on appeal, and it does not appear that Zimmerman filed an appeal from the Iowa court order.

On May 15, 2013, Zimmerman filed a complaint in the district court for Douglas County, seeking to establish paternity and to obtain custody of both children. Zimmerman alleged in his complaint that both children had resided in Douglas County since their births and that he continued to reside in Douglas County with the older son.

On September 4, 2013, the district court found that Biggs was in default regarding Zimmerman's request to establish paternity. Zimmerman presented evidence establishing that he was the father of both children. The court ultimately entered an order on October 2, finding Zimmerman to be the children's father, and entered a paternity decree on October 8.

The district court, however, concluded that it did not have jurisdiction to entertain Zimmerman's request for custody. The court held that the Iowa protection order had determined temporary custody, that such order was entitled to full faith and credit, and that there had not been any action brought in Nebraska to contest custody. This appeal followed.

### III. ASSIGNMENT OF ERROR

Zimmerman's sole assignment of error on appeal is that the district court erred in finding that it lacked jurisdiction to entertain his request for custody.

### IV. ANALYSIS

Zimmerman argues on appeal that under the UCCJEA, the district court had authority to make an initial custody determination, and that the court erred in finding the Iowa protection order precluded any such determination. He argues that the Iowa court did not have authority to enter a custody order under the UCCJEA which would have deprived the Nebraska district court from jurisdiction, as the children's home state, to make a custody finding. We agree.

[1] In considering whether jurisdiction existed under the UCCJEA, when the jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law, which requires an appellate court to reach a conclusion independent from the trial court. *Carter v. Carter*, 276 Neb. 840, 758 N.W.2d 1 (2008).

[2] The UCCJEA was enacted to serve the following purposes: (1) to avoid interstate jurisdictional competition and conflict in child custody matters, (2) to promote cooperation between courts of other states so that a custody determination can be rendered in a state best suited to decide the case in the interest of the child, (3) to discourage the use of the interstate system for continuing custody controversies, (4) to deter child abductions, (5) to avoid relitigation of custody issues, and (6) to facilitate enforcement of custody orders. *Carter v. Carter, supra*.

[3,4] The most basic proposition under the UCCJEA is that in order for a state to exercise jurisdiction over a child custody dispute, that state must be the home state as defined by the UCCJEA or fall under limited exceptions to the home state requirement specified by the act. Neb. Rev. Stat. § 43-1238 (Reissue 2008); *Carter v. Carter, supra*. The UCCJEA provides that a state has jurisdiction to make an initial custody determination only if it is the home state of the child on the date of the commencement of the proceeding or was the home state

of the child within 6 months before the commencement of the proceeding and the child is absent from the state but a parent or person acting as a parent continues to live in the state. § 43-1238; *Carter v. Carter, supra*.

[5] In the present case, the Iowa district court apparently made a temporary custody determination in the course of granting a domestic abuse protection order. Although a custody determination in a domestic violence case *could* be considered an initial child custody determination under Neb. Rev. Stat. § 43-1227 (Reissue 2008), such a determination is considered binding and conclusive on other courts only if such determination was made by a court with jurisdiction under the UCCJEA. See Neb. Rev. Stat. § 43-1231 (Reissue 2008). Similarly, Neb. Rev. Stat. § 43-1241 (Reissue 2008) provides that under the UCCJEA, a court may exercise emergency temporary jurisdiction under the act, but such a determination remains in effect only until a court that would have jurisdiction to make an initial custody determination (i.e., the home state of the child) enters an order.

Iowa has also enacted the UCCJEA, and Iowa's provisions concerning jurisdiction to make an initial custody determination likewise demand that the court be the home state of the child, in the absence of circumstances demonstrating that one of the narrow exceptions should apply. Iowa Code Ann. § 598B.201 (West 2001). None of the exceptions allowing an Iowa court to make an initial child custody determination without being the home state of the child appear to be relevant to this case.

In this case, any temporary custody order entered by the Iowa court as part of a domestic violence case would not serve as an initial custody order under the UCCJEA and would not be binding and conclusive on the issue in a court that would properly have jurisdiction to make an initial custody order. It would, instead, be merely a temporary order that could be in effect until such time as a court with jurisdiction to enter an initial custody order makes a determination on custody.

Zimmerman testified that both children had resided with him and Biggs in Omaha from the time of their births—2010 for the older son and 2013 for the younger son—until Biggs took the

younger son to Iowa in April 2013. This evidence was uncontroverted. Thus, it is apparent from the record that Nebraska was the home state of the children. The record presented on appeal indicates that the current proceeding was the first to establish paternity of the children, and there is no indication of any prior custody order concerning the children.

Under § 43-1238, the district court in the present case had jurisdiction to make an initial custody determination. Nebraska was the home state, and there is no indication that any other court had jurisdiction under the UCCJEA to make an initial custody determination. The initial custody determination of the district court would then supersede any temporary order entered by the Iowa court. See § 43-1241. The district court erred in concluding that it lacked jurisdiction to make an initial custody determination, and we remand for further proceedings.

## V. CONCLUSION

We conclude that Nebraska was the home state of the children under the UCCJEA and that the district court erred in concluding it lacked jurisdiction to make an initial custody determination. We remand for further proceedings.

REMANDED FOR FURTHER PROCEEDINGS.